1
2
3
4
5

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ESTES, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L3 TECHNOLOGIES, INC.; L3 UNIDYNE, INC.,<br><br>Defendants. | Case No.: 3:17-CV-02356-H-JMA<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) CONDITIONALLY GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT;**<br><br>**(3) APPROVING CLASS NOTICE;**<br><br>**(4) APPOINTING CLAIMS ADMINISTRATOR; and**<br><br>**(5) SCHEDULING FINAL APPROVAL HEARING**<br><br>[Doc. No. 25] |

On June 25, 2018, Plaintiff Joseph Estes ("Plaintiff") filed an unopposed motion seeking provisional class certification, preliminary approval of a proposed class action settlement, approval of a proposed dissemination of class notice, appointment of claims administrator, and a final approval schedule. (Doc. No. 25.)

The Court held a hearing on the motion on August 1, 2018. (Doc. No. 27.) Eric Kingsley appeared for Plaintiff, and Chet Kronenberg appeared for Defendants L3 Technologies, Inc. ("L3 Technologies"), and L3 Unidyne, Inc. ("L3 Unidyne") (collectively, "Defendants"). For the following reasons, the Court grants Plaintiff's motion and sets a schedule for further proceedings.

## **BACKGROUND**

### A. Factual and Procedural Background

In the operative, first amended complaint, filed on February 9, 2018, Plaintiff alleges that Defendants provide a broad range of communication and electronic systems products for military, homeland security, and commercial use. (Doc. No. 9 ¶ 2.) Defendants are Delaware corporations and maintain several offices through California, including in the city and county of San Diego. (Id. ¶ 10.) Plaintiff was hired through Defendants' San Diego office to work as a mechanic. (Id. ¶¶ 8, 9.) He began work in September 2017, in Camp Pendleton, California. (Id. ¶ 9.) As part of his job application, Plaintiff filled out Defendants' "Background Investigation Consent" form ("the Form"), which purported to permit Defendants to obtain a consumer report verifying Plaintiff's background experience. (Id. ¶ 3.) The Form also included a liability release provision, which stated, in pertinent part:

> I release L3 TECHNOLOGIES, INC. and/or its agents and any person or entity, which provides information pursuant to this authorization, [from] any and all liabilities, claims or law suits in regards to the information obtained from any and all of the above references sources used.

(Id. ¶¶ 25, 26.)

Plaintiff alleges that the Background Investigation Consent Form did not constitute valid consent for purposes of the Fair Credit Reporting Act ("the FCRA") because it included the liability release provision in addition to authorizing Defendants to obtain a consumer report. (Id. ¶¶ 17-20.) More specifically, Plaintiff alleges that Defendants' use of the Form violated 15 U.S.C. § 1681b(b)(2)(A), which provides:

//

> A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Id. § 1681b(b)(2)(A)(i)-(ii) (emphasis added). Thus, Plaintiff alleges that Defendants did not obtain proper authorization for procurement of a consumer report because the Background Investigation Consent Form did not consist "solely of the disclosure" but rather also included the liability release provision. (Doc. No. 9 ¶¶ 17-20, 27-28.) Moreover, Plaintiff alleges that, in completing the Form, he was not aware that he was signing both an authorization and a waiver combined into one document. (Id. ¶ 33.) He alleges that he was "confused by the authorization-waiver document and did not understand, based on the document, that Defendants would be requesting a 'consumer report' as defined in the FCRA or that the document purported to waive his right to sue." (Id.)

In addition to the alleged FCRA violations, Plaintiff alleges that Defendants violated California Labor Code § 226(a) by issuing wage statements to Plaintiff that did not contain the name and address of the legal entity that was his employer. (Id. ¶¶ 4, 23.) Plaintiff's wage statements allegedly contained neither the name nor address of L3 Unidyne or L3 Technologies. (Id. ¶ 4.)

Plaintiff brought this class action on behalf of himself and two proposed classes: (1) a "Proposed FCRA Class," defined as "all persons in the United States who filled out Defendants' standard 'Background Investigation Consent' form that included an authorization and a liability release clause at any time during the period beginning five (5)

years prior to the filing of the Complaint to the present time"; and (2) a "Proposed Wage Statement Class," defined as "all employees who are employed or have been employed by Defendants in the State of California who worked one or more pay periods since one (1) year prior to the filing of the First Amended Complaint in this action and continuing to the present." (Id. ¶ 5(a)-(b).) Plaintiff seeks declaratory relief, statutory and punitive damages, and attorneys' fees. (Id. at 15.)

Plaintiff filed the original, class action complaint on November 21, 2017, naming L3 Technologies as the sole defendant. (Doc. No. 1.) Plaintiff brought two causes of action under the FCRA based on L3 Technologies' alleged unlawful inclusion of the liability release in the Background Investigation Consent Form. (Id.) On January 29, 2018, L3 Technologies filed a motion to dismiss the complaint. (Doc. No. 8.) On February 9, 2018, Plaintiff filed the first amended complaint, naming L3 Technologies and L3 Unidyne as defendants and adding a third cause of action for violation of California Labor Code § 226(a)(8). (Doc. No. 9.) On February 12, 2018, the Court denied as moot L3 Technologies' motion to dismiss the original complaint. (Doc. No. 11.) On March 2, 2018, Defendants filed a motion to dismiss the first amended complaint. (Doc. No. 14.) On March 13, 2018, the Court granted the parties' joint motion to continue the hearing on Defendants' motion to dismiss in order to allow time for mediation. (Doc. Nos. 16, 18.) On May 21, 2018, Plaintiff filed a notice of settlement, (Doc. No. 19), and Defendants withdrew their motion to dismiss, (Doc. No. 20).

Following a full-day mediation before the Honorable Carl J. West (Ret.) of JAMS on May 9, 2018, the parties reached a tentative settlement and subsequently engaged in extensive negotiations about the terms and conditions of settlement. (Doc. No. 25 at 11.) A formalized stipulation has been submitted with the instant motion. (Doc. No. 25-1, Kingsley Decl. ¶ 9, Ex. 1 (the "Proposed Settlement").) By the present motion, Plaintiff seeks approval of the settlement class, preliminary approval of the Proposed Settlement and class notice, and a scheduling order for further proceedings. (See Doc. No. 25.)

//

//

**B. Proposed Settlement Agreement**

As mentioned above, the proposed settlement agreement would create an FCRA Class as well as a Wage Statement Class. (See Proposed Settlement at 4.) There are an estimated 840 FCRA Class members and 213 Wage Statement Class members. (Id. at 5.) Members of one or both of these classes are deemed "Settlement Class Members." (Id.) Settlement Class Members can opt-out of the Proposed Settlement by submitting a written request to the claims administrator, and they can object to the Proposed Settlement by filing an objection with the Court. (Id. at 12-13.)

Under the Proposed Settlement, Defendants will establish a settlement fund of $275,000 to resolve the litigation. (Id. at 3.) This amount will pay approved claims as well as attorneys' fees and costs. (Id.) Each Class Member's recovery will consist of an amount for the Member's FCRA claim and a separate amount for the Member's wage statement claim, as applicable. The parties have agreed that each of the approximately 840 FCRA Class Members will receive $75, meaning that $63,000 of the settlement fund will be allocated to the FCRA class and $109,333.33 of the settlement fund will be allocated to the Wage Statement Class. (Id. at 14.) The remainder of the settlement fund will be divided pro rata among Wage Statement Class members based on the estimated number of received eligible wage statements, assuming two paychecks received per month for the duration of the Wage Statement Class member's employment. (Id.)

For attorneys' fees, Plaintiff's counsel seeks $91,666.67, or roughly one-third (33%) of the settlement fund. (Id. at 16.) For costs, Plaintiff's counsel requests $6,000, which will cover all past and future litigation costs and expenses necessary to prosecute, settle, and administer the litigation and the settlement. (Id.) The settlement fund will also be used to pay the class representative an "enhancement" payment of $5,000. (Id. at 17.) Any funds that remain uncashed after 180 days will be distributed as follows: 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund, 25% to the State Treasury for deposit in the Equal Access Fund of the Judicial Branch, and 50% to

Bet Tzedek Legal Services. (Id. at 15.) The parties request appointment of RG/2 Claims Administration LLC as claims administrator. (Id. at 16.)

**DISCUSSION**

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the Court must assess whether a class exists and then consider whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id. (citation omitted).

**I. Class Certification**

In this case, Plaintiff seeks to certify the proposed FCRA and Wage Statement settlement classes pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement only. (See Doc. No. 25 at 20.) The FCRA Class includes "all persons in the United States who filled out Defendants' standard 'Background Investigation Consent' form that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of the Complaint to the present time," and the Wage Statement Class includes "all employees who are employed or have been employed by Defendants in the State of California who worked one or more pay periods since one (1) year prior to the filing of the First Amended Complaint in this action and continuing to the present." (Doc. No. 9 ¶ 5(a)-(b).) A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Once subsection (a) is satisfied, the purported class must then fulfill Rule 23(b)(3)'s requirements. Id.

**a. Rule 23(a) Requirements**

Rule 23(a) provides that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff estimates that the FCRA Class alone contains 840 members. (Doc. No. 25 at 17-18.) Accordingly, the proposed class satisfies the numerosity prerequisite. See, e.g., Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

The commonality prerequisite is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, 131 S. Ct. at 2551). Here, there are several questions of law and fact that are common to the class. (See Doc. No. 1 ¶ 35.) Importantly, a common question is whether Defendants violated the FCRA by including a waiver provision in the Background Investigation Consent Form that purported to secure job applicants' authorization for procurement of consumer reports. (Doc. No. 9 ¶ 42(c).) Additional common questions include whether Defendants required members of the proposed FCRA Class to fill out a Background Investigation Consent Form, whether Defendants violated the FCRA by procuring consumer reports without valid authorization, and whether any violation of the FCRA was willful. (See Doc. No. 9 ¶ 42.) Accordingly, the commonality prerequisite is met. See Wal-Mart Stores, 131 S. Ct. at 2556 (explaining that, for Rule 23(a)(2) purposes, "[e]ven a single [common] question will do" (citation omitted)).

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff and the purported FCRA Class members

7

3:17-CV-02356-H-JMA

held the same position and claim the same injury—namely, that they completed a Background Investigation Consent Form that violated the FCRA and/or that they received wage statements lacking statutorily required information during their employment with Defendants. (Doc. No. 25 at 27.) Because Plaintiff's claims are reasonably co-extensive with those of absent class members, the typicality prerequisite is met.

Adequacy of representation requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. Here, there does not appear to be any conflicts of interest between Plaintiff and the purported class members. Plaintiff and his counsel have vigorously prosecuted the interests of the class, (see Doc. No. 25 at 20; Doc. No. 25-1, Kingsley Decl. ¶ 51), and class counsel has extensive experience in class actions and complex litigation, including consumer and employment law cases, (see id.). Accordingly, Plaintiff and his counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiff has met all of the requirements of Rule 23(a).

### b. Rule 23(b)(3) Requirements

#### i. Predominance

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Predominance requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (citation omitted). Thus, "a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." Vinole v. Countrywide Home Loans, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted).

Here, a single adjudication will resolve the central issue of the case—namely,

8

3:17-CV-02356-H-JMA

whether Defendants violated the FCRA by using the Background Investigation Consent Form, which included a liability release provision in addition to disclosure of the possibility that Defendants would obtain consumer reports for job applicants. (Doc. No. 9 ¶ 42). A single adjudication will also resolve the issue whether Defendants violated state law by allegedly supplying employees with wage statements lacking the name of the employing legal entity. (Id.) Thus, the proposed class is "sufficiently cohesive to warrant adjudication by representation," and the predominance requirement is met. See Hanlon, 150 F.3d at 1022.

### ii. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Moreover, any class member who wishes to pursue an individual claim may elect not to participate in the settlement agreement. (Proposed Settlement at 13.) Accordingly, the superiority requirement is met here, and Plaintiff has met the requirements of Rule 23(b)(3).

**II.     The Proposed Settlement Agreement**

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the

proposed settlement. Id. Furthermore, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). At the preliminary approval stage, the Court need only review the parties' proposed settlement to "determine whether it is within the permissible range of possible judicial approval." See id. at 666 (citation omitted). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).

After reviewing the Proposed Settlement in light of the above factors and the current stage of the litigation, the Court concludes that preliminary approval is appropriate. The Proposed Settlement appears to be the result of serious, informed, and non-collusive negotiations. See Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 324 (N.D. Cal. 2013). Following multiple rounds of dispositive motions, and with the benefit of sufficient investigation and discovery, the parties conducted "informed, good faith, arms-length negotiations." (Kingsley Decl. ¶¶ 20-21.) An experienced JAMS mediator supervised a day-long mediation session, and the parties reached a tentative settlement, subject to finalization of a formal stipulation for resolution and Court approval. (Doc. No. 25 at 3; Kingsley Decl. ¶ 20.) The parties then worked to finalize the settlement's terms. (Doc. No. 25 at 3; Kingsley Decl. ¶ 9).

Class counsel is experienced with consumer and employment law class actions and believes that the proposed settlement signifies a "good result" for Plaintiff and the

10

3:17-CV-02356-H-JMA

Settlement Class Members and is in their best interests, given the complexities of the case, the risk of failing to secure class certification, and the risk of not prevailing on the merits at trial. (Kingsley Decl. ¶ 22; Doc. No. 25 at 4.) The proposed settlement fund will contain $250,000, without reversion or discount. (Proposed Settlement at 3.) This amount will pay approved claims as well as attorneys' fees and costs. (Id.) Each Class Member's recovery will consist of an amount for the Member's FCRA claim and a separate amount for the Member's wage statement claim, as applicable. The parties have agreed that each of the approximately 840 FCRA Class Members will receive $75, such that $63,000 of the settlement fund will be allocated to the FCRA class and $109,333.33 of the settlement fund will be allocated to the Wage Statement Class. (Id. at 14.) The $109,333.33 figure will be divided pro rata among Wage Statement Class members based on the estimated number of received eligible wage statements, assuming two paychecks received per month for the duration of the Wage Statement Class member's employment. (Id.)

The request for attorney's fees and costs of no more than 33% of the settlement fund is within the permissible range of acceptable attorneys' fees in Ninth Circuit cases. (See id. at 16); see Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of the total settlement value, with 25% considered the benchmark."). Additionally, the proposed enhancement award of $5,000 for the named Plaintiff appears reasonable considering that, during this litigation, Plaintiff assisted Class Counsel with factual issues, participated in mediation, and exposed himself to costs in the event his case did not succeed. (Kingsley Decl. ¶ 44.) This amount is also consistent with amounts typically awarded as incentive payments. See In re Toys "R" Us—Del., Inc., 295 F.R.D. 438, 470 (C.D. Cal. 2014) (collecting cases). The settlement administration costs, estimated to be $6,000, appear reasonable. (See Proposed Settlement at 16.)

The parties may designate a *cy pres* recipient for unclaimed settlement funds, provided it qualifies "as 'the next best distribution' to giving the funds directly to class members. Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (quoting Six Mexican

Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1308 (9th Cir. 1990)). There must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011); see also Lane v. Facebook, Inc., 696 F.3d 811, 821 (9th Cir. 2012). To that end, a *cy pres* award must be guided by the underlying statute's objectives and the silent class members' interests, and "must not benefit a group 'too remote from the plaintiff class.'" Dennis, 697 F.3d at 865 (quoting Six Mexican Workers, 904 F.2d at 1308).

Here, the Proposed Settlement contemplates that any settlement funds that remain uncashed after 180 days will be distributed as follows: 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund, 25% to the State Treasury for deposit in the Equal Access Fund of the Judicial Branch, and 50% to Bet Tzedek Legal Services. (Proposed Settlement at 15.) But on the record before the Court, Plaintiff has not shown that a "driving nexus" exists between the putative class and the proposed *cy pres* recipients. See Dennis, 697 F.3d at 865. In previous FCRA class action settlements, for example, courts have approved *cy pres* recipient organizations that promote consumer protection and financial literacy. See Patel v. Trans Union, LLC, No. 14-CV-00522-LB, 2018 WL 1258194, at *3 (N.D. Cal. Mar. 11, 2018); see also Carter v. McDonald's Rests., No. EDCV-15-01531-MWF-(JCx), 2017 WL 5634300, at *5 (C.D. Cal. Mar. 15, 2017) (approving Consumer Federation of California, "which advocates for consumer protection interests with state and federal agencies," as *cy pres* recipient in FCRA class action settlement). Although the Court will still grant preliminary approval despite the Proposed Settlement's shortcoming, the Court cautions that this approval is contingent on the parties submitting, within 14 days of this Order, (1) evidence demonstrating that a driving nexus indeed exists between the putative class and the currently proposed *cy pres* beneficiaries; or (2) an alternative *cy pres* recipient(s) that satisfies the Ninth Circuit's standards.

For the foregoing reasons, the Court conditionally grants preliminary approval of the Proposed Settlement. The Court appoints RG/2 Claims Administration LLC as claims administrator. The Court reserves judgment on the reasonableness of the attorneys' fees

and administration costs for the final approval hearing, and reserves the right to revoke this approval if the parties do not timely submit a valid *cy pres* recipient for the Court's approval.

### III. Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

#### a. Content of the Notice

Here, the content of the notice is adequate. In clear, understandable language, it provides the following: a description of the lawsuit; a description of the settlement classes (FCRA Class and Wage Statement Class) and proposed method for calculating payments to Class Members; an explanation of the material elements of the settlement; a statement that class members have the right to exclude themselves from, or object to, the settlement, and a description of how class members may do so; and a description of the anticipated motion for final approval and the final approval hearing. (See Doc. No. 25-2, Ex. A.)

#### b. Method of Notice

The proposed method of notice is also reasonable. Defendants will provide the Claims Administrator with relevant information pertaining to each Settlement Class Member, including each Member's name, last known address, social security number, email address (for current employees), and the number of eligible wage statements that

| | |
|---|---|
| 1 | each Member received during the Wage Statement Settlement Period—that is, from |
| 2 | February 9, 2017, through the earlier of preliminary settlement approval or July 1, 2018. |
| 3 | (Proposed Settlement at 11.) The Claims Administrator will run all the provided addresses |
| 4 | through the U.S. Postal Service NCOA database to obtain current information and then |
| 5 | mail the Notice to Settlement Class Members by first-class mail. The Claims Administrator |
| 6 | will skip-trace or forward returned mail and re-email, if necessary. (Id.) No later than seven |
| 7 | days before the anticipated final approval hearing, the Claims Administrator will notify the |
| 8 | parties' counsel as to completion of the Notice process, including the number of attempts |
| 9 | made to obtain valid mailing addresses for, and to re-send, any returned Notices, as well |
| 10 | as the number of valid disputes submitted, opt-outs, and other deficiencies. (Id.) |
| 11 | Having reviewed the content and proposed method of providing notice, the Court |
| 12 | determines the notice is adequate and sufficient to inform the class members of their rights. |
| 13 | Accordingly, the Court approves the form and manner of giving notice of the Proposed |
| 14 | Settlement. |

**IV. Scheduling Fairness Hearing**

The Court schedules the final approval hearing for January 7, 2019, at 10:30 a.m. Defendant must provide an updated class list to the settlement administrator by August 17, 2018. The settlement administrator must mail class notices by August 31, 2018. Potential class members must return their claims or other responses by November 16, 2018. Plaintiff must file a motion for attorneys' fees on or before October 12, 2018. Plaintiff must file a motion for incentive awards on or before October 12, 2018. Plaintiff must file a motion for final approval of the settlement on or before December 21, 2018.

//
//
//
//
//
//

## CONCLUSION

For the reasons discussed above, the Court approves Plaintiff's request for provisional certification of the class for purposes of settlement, conditionally grants Plaintiff's request for preliminary approval of the proposed settlement, and approves the form and manner of the notice of the proposed settlement to the class members. (Doc. No. 25.) On or before **August 15, 2018**, the parties must submit (1) evidence demonstrating that a driving nexus exists between the putative class and the currently proposed *cy pres* beneficiaries; or (2) an alternative *cy pres* recipient(s) that satisfies the Ninth Circuit's standards. Additionally, the Court sets the final approval hearing for **January 7, 2019**, at **10:30 a.m.** Plaintiff must file any motions for fee awards and incentive awards on or before **October 12, 2018**. Plaintiff must file a motion for final approval of the settlement on or before **December 21, 2018.**

**IT IS SO ORDERED.**

DATED: August 1, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT