**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq. (SBN 185123)
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq. (SBN 260264)
kelsey@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Tel: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN PROFESSIONAL LAW CORPORATION**
EMIL DAVTYAN, Esq. (SBN 299363)
support@davtyanlaw.com
5959 Topanga Canyon Blvd, Suite 130
Woodland Hills, CA 91367
Tel: (818) 875-2008
Fax: (818) 722-3974

Attorneys for Plaintiff JOSEPH ESTES

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ESTES an individual, on behalf of himself and others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>L3 TECHNOLOGIES, INC.; L3 UNIDYNE, INC.; and DOES 1 thru 50, inclusive,<br><br>DEFENDANTS. | CASE NO.  3:17-cv-02356-H-JMA<br><br>[Case Assigned for All Purposes to Hon. Marilyn L. Huff]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     January 7, 2019<br>Time:    10:30 am<br>Crtrm.:  15A<br>Judge:  Hon. Marilyn L. Huff<br><br>[*Filed Concurrently with: Declarations of Eric B. Kingsley, Emil Davtyan, Joseph Estes; Motion for Attorneys' Fees & Costs; Proposed Order and Judgment*] |

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on January 7, 2019, at 10:30 a.m., in the above-entitled Court located at 333 West Broadway, Courtroom 15A, San Diego, CA 92101, Plaintiff JOSEPH ESTES will, and hereby does, move this Court for an order granting final approval of a proposed class action settlement. The terms of the settlement are contained within the Joint Stipulation of Class Action Settlement and Release filed herewith. This motion is unopposed by Defendants.

This motion will be made on the grounds that the proposed Class Settlement is fair, adequate, reasonable, and in the best interest of the Classes and the Parties.

This motion is based on this Notice and accompanying Memorandum of Points and Authorities, the Declarations of Eric B. Kingsley, Emil Davtyan, Joseph Estes, the Joint Stipulation of Class Action Settlement and Release, all other papers and records on file in this action, and on such further evidence as may be presented at the hearing.

Dated: October 11, 2018

KINGSLEY & KINGSLEY, APC

By: _____

Eric B. Kingsley
Kelsey M. Szamet
Attorneys for Plaintiff Joseph Estes and
the Settlement Classes

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................. 1

III.    SUMMARY OF SETTLEMENT TERMS .......................................... 3

    A.    The Settlement Class .............................................................. 3

    B.    Settlement Fund ...................................................................... 4

    C.    The Release by Plaintiff and Class Members .......................... 6

IV.     THE CLAIMS ADMINISTRATION PROCESS IS NOT YET
COMPLETE; THEREFORE, CLASS COUNSEL WILL PROVIDE
SUPPLEMENTAL INFORMATION BY DECEMBER 21, 2018 ............... 7

V.      THE COURT SHOULD ORDER FINAL APPROVAL OF THE
SETTLEMENT ........................................................................... 8

    A.    The Strength of Plaintiff's Case .............................................. 9

        1.    Risks Associated with the FCRA Claims ...................... 9

        2.    Risks Associated with the Wage Statement Claim ................ 14

    B.    The Risk, Expense, Complexity, and Likely Duration of Further
Litigation ............................................................................... 17

    C.    The Risk of Maintaining Class Action Status Through Trial ............... 17

    D.    The Amount Offered in Settlement ........................................ 18

    E.    The Extent of Discovery Completed, and the Stage of the
Proceedings .......................................................................... 18

    F.    The Experience and Views of Counsel ................................... 19

    G.    The Reaction of the Class Members to the Proposed Settlement ......... 20

    H.    The Parties Arrived at the Settlement Through Arm's Length
Negotiations with the Assistance of a Respected Mediator ................ 21

VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES .......... 21

    A.    FRCP 23(a) Requirements for Class Certification Are Met ............... 21

        1.    Numerosity ................................................................. 22

i

2.     Commonality ............................................................... 22

3.     Typicality ..................................................................... 23

4.     Adequacy of Representation ....................................... 24

B.     FRCP 23(b)(3) Requirements for Class Certification Are Met ............ 25

1.     Predominance ............................................................. 25

2.     Superiority .................................................................. 25

VII.   CONCLUSION ........................................................................... 26

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL CASES</u>

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ......................................................................................... 25

*Bercut v. Michaels Stores Inc.,*
  No. 17-CV-01830-PJH, 2017 WL 2807515 (N.D. Cal. June 29, 2017).......... 11, 12

*Churchill Vill., LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004)................................................................................ 8

*Cunha v. IntelliCheck, LLC,*
  254 F.Supp.3d 1124 (N.D. Cal. May 26, 2017) ...................................................... 11

*Delgado v. New Albertson's, Inc.,*
  2009 WL 10670628 (C.D. Cal. Dec. 15, 2009) ................................................. 15, 16

*Demmings v. KKW Trucking, Inc.,*
  No. 14-CV-494, 2017 WL 1170856 (D. Or. Mar. 29, 2017)............................... 11

*Dunford v. Am. DataBank, LLC,*
  64 F. Supp. 3d 1378 (N.D. Cal. 2014) ................................................................ 14

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
  213 F.3d 454 (9th Cir. 2000)........................................................................... 17, 18

*Dyson v. Sky Chefs, Inc., No. 3:16-CV-3155-B,*
  2017 WL 2618946 (N.D. Tex. June 16, 2017) ..................................................... 11

*Elliot v. Spherion Pac. Work, LLC,*
  368 F. App'x 761 (9th Cir. 2010)........................................................................ 15

*Fisher v. Enterprise Holdings, Inc.,*
  No. 15-CV-00372, 2016 WL 4665899 (E.D. Mo. Sept. 7, 2016) ........................ 11

*Gen. Tel. Co. of the SW v. Falcon,*
  457 U.S. 147 (1982).............................................................................................. 23

*Godhigh v. Savers, LLC,*
  No. 16-cv-02874-WHO, 2016 WL 4585778 (N.D. Cal. Sept. 2, 2016)................ 15

*Griffin v. Carlin,*
  755 F.2d 1516 (11th Cir. 1985).............................................................................. 24

*Groshek v. Time Warner Cable, Inc.,*
  865 F.3d 884 (7th Cir. 2017)................................................................................. 11

*In re Immune Response Sec. Litig.,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 18

*In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation,*
  MDL No. 2615, 2017 WL 354023 (D.N.J. Jan. 24, 2017) .................................... 11

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004).................................................................13

*In re Ocwen Loan Servicing LLC Litig.*,
   No. 3:16–cv–00200–MMD–WGC, 2017 WL 1289826 (D. Nev. Mar. 3, 2017)..11

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008).................................................................8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
   Liability Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................19

*LaFollette v. RoBal, Inc.*,
   No. 1:16-CV- 2592-WSD, 2017 WL 1174020 (N.D. Ga. Mar. 30, 2017)...........11

*Landrum v. Blackbird Enters., LLC*,
   214 F. Supp. 3d 566 (S.D. Tex. 2016) ....................................................11

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)............................................................12, 17

*Meza v. Verizon Commc'ns, Inc.*,
   No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475 (E.D. Cal. Sept. 9, 2016).......11

*Milbourne v. JRK Residential Am., LLC*,
   No. 3:12CV861, 2016 WL 1071570 (E.D. Va. Mar. 15, 2016) ..........................12

*Mitchell v. Winco Foods, LLC*,
   No. 1:16-CV-00076-BLW, 2017 WL 5349539 (D. Idaho Nov. 13, 2017).....11, 12

*Mix v. Asurion Ins. Servs. Inc.*,
   No. CV-14-02357, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016) .........................11

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003)..................................................................21

*Nunez v. BAE Systems San Diego Ship Repair, Inc.*,
   292 F. Supp. 3d 1018 (S.D. Cal. 2017).................................................19, 20

*Officers for Justice*,
   688 F.2d 615 (9th Cir. 1982)................................................................8, 21

*Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995).....................................................................19

*Pataky v. Brigantine, Inc.*,
   No. 17-cv-00352-GPC-AGS, 2018 WL 3020159 (S.D. Cal. June 19, 2018)........22

*Saltzberg v. Home Depot, U.S.A., Inc.*,
   No. CV1705798RGKAKX, 2017 WL 4776969 (C.D. Cal. Oct. 18, 2017)..........11

*Shoots v. iQor Holdings US Inc.*,
   No. 15-CV-563 (SRN/SER), 2016 WL 6090723 (D. Minn. Oct. 18, 2016).........11

iv

*Slezak v. City of Palo Alto*,
  2017 WL 2688224 (N.D. Cal. June 22, 2017) ........................................................ 19

*Smith v. Ohio State Univ.*,
  191 F. Supp. 3d 750 (S.D. Ohio 2016) ................................................................. 11

*Speaks v. U.S. Tobacco Coop., Inc.*,
  324 F.R.D. 112 (E.D.N.C. 2018) ......................................................................... 22

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017).................................................................... 9, 10, 12

*Terrell v. Costco Wholesale Corp.*,
  No. C16–1415JLR, 2017 WL 951053 (W.D. Wash. Mar. 10, 2017).................... 11

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006).............................................................................. 13

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)................................................................................ 8

*Welmer v. Syntex*,
  117 F.R.D. 641 (N.D. Cal. 1987) .................................................................. 23, 24

**Federal Statutes**

15 U.S.C. § 1681(b)(2)(A)(i) and (ii) ........................................................................ 10

15 U.S.C. § 1681b(b)(2)(A)...........................................................................9, 10, 11

15 U.S.C. § 1681b(b)(2)(A)(i)...................................................................................... 11

15 U.S.C. § 1681b(b)(2)(A)(ii)..................................................................................... 11

15 U.S.C. § 1681n ........................................................................................................ 10

15 U.S.C. § 1681n(a) ................................................................................................... 18

15 U.S.C. § 1681n(a)(1) .............................................................................................. 12

15 U.S.C. § 1681p ....................................................................................................... 13

15 U.S.C. § 1681p(2) ................................................................................................... 14

**State Statutes**

Cal. Lab. Code § 1542 ................................................................................................... 6

Cal. Lab. Code § 226 ............................................................................................. 15, 17

Cal. Lab. Code § 226(a)......................................................................................... 14, 18

Cal. Lab. Code § 226(a)(8)................................................................................... passim

Cal. Lab. Code § 226(e)(1)............................................................................... 14, 16, 18

Cal. Lab. Code § 226(e)(3)..................................................................... 16

Cal. Lab. Code § 384(b)(3)...................................................................... 5

**Federal Rules**

Federal Rule of Civil Procedure § 23 ...................................................... 21

Federal Rule of Civil Procedure § 23(a)......................................... 21, 22, 23

Federal Rule of Civil Procedure § 23(a)(4)............................................. 24

Federal Rule of Civil Procedure § 23(b) ................................................. 21

Federal Rule of Civil Procedure § 23(b)(3)............................................. 25

Federal Rule of Civil Procedure § 23(e).............................................. 8, 21

Federal Rule of Civil Procedure § 23(e)(1)(C) ........................................ 8

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41
   (4th ed. 2002) ..................................................................................... 8

4 Newberg on Class Actions § 11.41 (4th ed. 2002 & Supp. 2008) ....................... 17

Manual for Complex Litigation, Fourth, § 21.6 at 309 (2004) .................................. 8

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION[1]

Plaintiff JOSEPH ESTES ("Plaintiff" or "Estes") seeks final approval of a class action settlement entered into with Defendants L3 TECHNOLOGIES, INC. and L3 UNIDYNE, INC. ("Defendants") (the "Parties").  The settlement terms are embodied in a Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), attached as Exhibit "A" to the concurrently filed Declaration of Eric B. Kingsley.  The Court preliminarily approved the settlement on August 8, 2018.  (Doc. Nos. 30-31).

As the settlement satisfies all relevant standards for being deemed "fair, adequate and reasonable," Plaintiff hereby asks the Court to: (1) grant final approval of the settlement pursuant to the terms of the Settlement Agreement; (2) certify the proposed settlement classes; (3) award attorneys' fees and costs as detailed in the concurrently filed Motion for Attorneys' Fees and Costs; (4) award a class representative payment of $5,000.00 to Plaintiff Joseph Estes; and (5) enter judgment.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On November 21, 2017, Plaintiff filed a class action complaint in the United States District Court for the Southern District of California, alleging two causes of action under the Fair Credit Report Act's ("FCRA") disclosure and authorization requirements based upon Defendant L3 Technologies, Inc.'s alleged unlawful inclusion of a liability release in its allegedly "standard" background check consent form.  Kingsley Decl. ¶ 3, Ex. A, Stip. at 5:11-14.

On January 29, 2018, Defendant L3 Technologies, Inc. filed a motion to dismiss Plaintiff's complaint for various reasons, including lack of Article III standing and that it was not the entity responsible for the allegedly improper disclosure and authorization form.  Plaintiff filed a First Amended Complaint ("FAC") on February 9, 2018, adding L3 Unidyne, Inc. as a defendant and a third claim for a violation of

---

[1] Unless otherwise indicated, this motion for Final Approval of the Settlement uses the defined terms in the Settlement Agreement.

1  California Labor Code § 226(a)(8) against L3 Unidyne, Inc.  Kingsley Decl. ¶¶ 4-5,
2  Ex. A, Stip. at 5:15-18.

3     On March 2, 2018, Defendants filed a renewed motion to dismiss Plaintiff's
4  FAC.  Kingsley Decl. ¶ 6, Ex. A, Stip. at 5-6.

5     Staying the pending Motion to Dismiss, the Parties agreed to attend a full-day
6  mediation with Hon. Carl J. West (Ret.) on May 9, 2018.  The Parties engaged in good
7  faith, arms-length negotiations and were able to reach a tentative settlement of the
8  litigation, subject to finalization of a formal stipulation for resolution and the approval
9  of the Court.  The Parties have since engaged in extensive negotiations about the terms
10  and conditions of the settlement.   The Parties have now entered the formalized
11  Settlement Agreement for submission to the Court.  Kingsley Decl. ¶¶ 7-10, Ex. A,
12  Stip. at 5:27-6:7.

13     Proposed Class Counsel has conducted an investigation of the law and facts
14  relating to the claims asserted in the litigation and has concluded, taking into account
15  the sharply contested issues involved, the expense and time necessary to pursue
16  litigation of the matter through trial and any appeals, the risks and costs of further
17  litigation, the risk of an adverse outcome, the uncertainties of complex litigation, and
18  the substantial benefits to be received by the Plaintiff and the members of the
19  Settlement Classes pursuant to the Settlement Agreement, that a settlement with
20  Defendants on the terms and conditions set forth in the Settlement Agreement is fair,
21  just, reasonable, adequate, and in the best interests of the Settlement Classes.
22  Plaintiff, on his own behalf and on behalf of the Settlement Classes, has agreed to the
23  proposed settlement with Defendants on the terms set forth herein.  Kingsley Decl.
24  ¶¶ 11-12, Ex. A, Stip. at 6:8-24.

25     Discussions between counsel for the Parties, informal discovery, as well as the
26  diligent investigation and evaluation of the claims of Plaintiff by the Parties, have
27  permitted each side to assess the relative merits of the claims and the defenses to those

28

1  claims.   Class Counsel reviewed Plaintiff's wage statements, the background

2  disclosure and consent form that Plaintiff signed, and for mediation purposes,

3  Defendants provided estimates of the number of FCRA Class Members and the

4  number of wage statements issued to the Wage Statement Class. Kingsley Decl. ¶¶

5  13-14.

6       Based on their own independent investigations and evaluations, proposed Class

7  Counsel is of the opinion that the consideration and terms of the settlement as

8  described herein, considering the risk of loss on class certification, the risk of loss on

9  the merits, and the risk of a reduction in any damages sought or awarded, is fair, just,

10  reasonable, and adequate in light of all known facts and circumstances, and is in the

11  best interests of the Settlement Classes.  Kingsley Decl. ¶ 15.

12       Plaintiff moved for preliminary approval of the settlement on August 1, 2018.

13  Kingsley Decl. ¶ 16; Doc. No. 25.  After holding a hearing, the Court issued an order

14  on August 8, 2018, granting preliminary approval, provisionally certifying the

15  settlement classes, and ordering the Claims Administrator to provide notice to the

16  settlement classes.  Kingsley Decl. ¶ 16; Doc. Nos. 30-31.

17       Following preliminary approval, Class counsel coordinated with the Claims

18  Administrator to ensure the proper mailing and emailing of the Class Notice and

19  closely monitored the notice process.  Kingsley Decl. ¶ 25.

20  **III.   SUMMARY OF SETTLEMENT TERMS**

21       The key terms of the Settlement Agreement are set forth below.

22       **A.   The Settlement Class**

23  The Settlement Classes are defined as:

24       i.   "All individuals who applied for a position with L3 Unidyne, Inc.

25            in the United States who filled out a 'Background Investigative

26            Consent' form that included an authorization and liability release

27            clause at any time during the period beginning five (5) years prior

28            to the filing of the Class Action Complaint in this action through

             the earlier of preliminary approval of the settlement or July 1,

3

2018 (the 'FCRA Class')."

    ii.   "All L3 Unidyne, Inc. employees in the State of California who worked one or more pay periods since one (1) year prior to the filing of the First Amended Class Action Complaint in this action and continuing through the earlier of preliminary approval of the settlement or July 1, 2018 (the 'Wage Statement Class')."

Kingsley Decl. ¶ 17.  During the applicable FCRA Class period of November 21, 2012 through July 1, 2018 (the "FCRA Settlement Period"), there are **764** class members; during the Wage Statement Class period of November 21, 2016 through July 1, 2018 (the "Wage Statement Settlement Period"), there are **254** class members. Kingsley Decl. ¶ 18.

**B.**    **Settlement Fund**

    The total amount of the settlement shall be $275,000.00 (the "Maximum Settlement Amount"), without reversion or discount.  The projected allocation of funds from the Maximum Settlement Amount is as follows:

| | |
|---|---|
| **Maximum Settlement Amount**: | **$ 275,000.00** |
| Class Counsel Fees (33.33%): | $ [91,666.67] |
| Class Counsel Costs: | $ [6,000.00][2] |
| Plaintiff Enhancement: | $ [5,000.00] |
| Net Settlement Amount: | $ 172,333.33[3] |

Kingsley Decl. ¶ 76, Ex. A, Stip. ¶¶ XI, XII.

    Each Settlement Class Member that does not opt out shall be a "Participating Settlement Class Member." Kingsley Decl. ¶ 19, Ex. A, Stip. at 4:1-3.

    The Net Settlement Amount to each Participating Settlement Class Member

---

[2]    Class Counsel's incurred costs are $6,691.18, but the settlement agreement caps cost reimbursement at $6,000.  Kingsley Decl. ¶ 77; Ex. A, Stip. at ¶ XI; Ex. B (cost report).

[3]    Defendants have separately agreed to pay for all settlement administration costs.  Thus, settlement administration costs will *not* be deducted from the Net Settlement Amount.  Kingsley Decl. ¶ 78, Ex. A, Stip. at 16:16-17:1.

will be determined based upon two components: an amount for the FCRA claim and a separate amount for the wage statement claim. For the FCRA claim, each of the 764 FCRA Class members shall each receive $75. This means that approximately **$57,300** of the Net Settlement Amount is allocated to the FCRA Class. The remainder of the Net Settlement Amount, estimated to be **$115,033.33**, shall be divided pro rata per Wage Statement Class member based upon the estimated number of Eligible Itemized Wage Statements that she/he received as compared to the total number of Eligible Itemized Wage Statements that each Wage Statement Class member has received in California at any time during the Wage Statement Settlement Period. Kingsley Decl. ¶¶ 80-81, Ex. A, Stip. at 14:13-24.

If an objection to the settlement is made but no appeal is filed, then individual Participating Settlement Class Members' payments, attorneys' fees, attorneys' expenses, and Plaintiff's enhancement award, shall be made by the Claims Administrator to Class Counsel within sixty (60) days of the Final Approval order. If an appeal is filed, payment of all claims, attorneys' fees, attorneys' expenses, and Plaintiff's enhancement award, shall occur within sixty (60) days of the date the judgment is Final and no longer subject to appeal. The settlement is not conditioned on the approval of the award of attorneys' fees, attorneys' expenses, or any enhancement award. Kingsley Decl. ¶ 82, Ex. A, Stip. at 15:1-7.

Any funds that remain uncashed after 180 days shall be turned over by the Claims Administrator, with information for each Participating Settlement Class Member who failed to timely cash his/her settlement check. The Claims Administrator shall distribute the uncashed funds consistent with Code of Civil Procedure Section 384(b)(3) with 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund, 25% to the State Treasury for deposit in the Equal Access Fund of the Judicial Branch, and 50% to Bet Tzedek Legal Services. Kingsley Decl. ¶ 83; Ex. A, Stip. at 15:8-11.

C.     **The Release by Plaintiff and Class Members**

The release applies only to Participating Settlement Class Members.  The term "Participating Settlement Class Member(s)" as used herein refers to the members of the Settlement Classes who do not timely opt out.  Kingsley Decl. ¶ 20; Ex. A, Stip. at 4:1-3.

Participating Settlement Class Members, upon the Effective Date, release the Releasees from any and all claims, known or unknown, that Class Members have arising out of or relating directly or indirectly in any manner whatsoever to the claims alleged in the operative complaint, or which could have been alleged or asserted the based on the facts alleged in the operative complaint, including (i) any and all claims under the FCRA and any parallel state or common law claims related to background checks or consumer reports for employment purposes; and (ii) any and all claims under the California Labor Code related to wage statements (the "Participating Settlement Class Members' Released Claims").  Kingsley Decl. ¶ 21; Ex. A, Stip. at 10:8-15.

With respect to the Participating Settlement Class Members' Released Claims only, the Participating Settlement Class Members expressly waive any rights or benefits available to them under the provisions of Section 1542 of the California Civil Code, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Participating Settlement Class Members assume all risks for Participating Settlement Class Members' Released Claims that have arisen, whether known or unknown, which they ever had, or hereafter may claim to have, arising on or before June 22, 2018 and specifically waive all rights they may have under California Civil

Code section 1542 with respect to the Participating Settlement Class Members' Released Claims only.  Kingsley Decl. ¶¶ 22-23; Ex. A, Stip. at 10:16-28.

## IV.   THE CLAIMS ADMINISTRATION PROCESS IS NOT YET COMPLETE; THEREFORE, CLASS COUNSEL WILL PROVIDE SUPPLEMENTAL INFORMATION BY DECEMBER 21, 2018

The settlement administration process it not yet complete.  Kingsley Decl. ¶ 28.  Class Counsel will provide supplemental briefing on the claims administration process by Friday, December 21, 2018 (the date that Class Counsel's motion for final approval of the settlement is due).  Kingsley Decl. ¶ 29.  At that time, Class Counsel will submit a declaration from the Claims Administrator.  Class Counsel has filed its motion for fees/costs concurrently to aid in the Court's review.  Kingsley Decl. ¶ 30.

The Court approved the proposed Class Notice (Doc. No. 25-2, Ex. A [class notice]), and directed the mailing of the Notice to Class Members by first-class mail and email in accordance with the Court's order and the Joint Stipulation of Settlement. (Doc. No. 31, ¶¶ 6-15).  Kingsley Decl. ¶ 24.

The Claims Administrator mailed 893 notices on August 17, 2018.  Kingsley Decl. ¶ 31; Ex. C.  There is overlap among members of the FCRA and Wage Statement classes; in other words, members of the Wage Statement Class are also members of the FCRA Class.  Kingsley Decl. ¶ 32.  Members of the Settlement Classes had until October 8, 2018, or forty-five (45) calendar days after the Notice is initially mailed or, with respect to current employees, emailed, to submit a valid request for exclusion or to object.  Kingsley Decl. ¶ 33.  However, the Claims Administrator needs additional time to account for any objections or requests for exclusion that were timely postmarked, but are not yet received by the Claims Administrator. *Id.*

Based on the latest weekly status report from the claims administrator on October 5, 2018, there are zero (0) objections and one (1) request for exclusion.

Kingsley Decl. ¶ 34; Ex. C; Ex. D.  As of today, the reaction of the Class Members is positive and weighs in favor of approval.  Kingsley Decl. ¶ 35; Ex. C; Ex. D.

## V.    THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT

A class action may not be dismissed, compromised or settled without court approval.  Fed. R. Civ. P. ("FRCP") 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  At the same time, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

On a motion for final approval of a class action settlement, the court inquires whether the settlement is "fair, adequate and reasonable," meaning that "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation*, Fourth, § 21.6 at 309 (2004); *see also* Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982).  The fairness inquiry involves the balancing of several factors, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, each of these factors weighs in favor of approving the current settlement.

## A.     The Strength of Plaintiff's Case

Plaintiff asserts three claims.  First, Plaintiff alleges that L3 Unidyne failed to make proper disclosures before obtaining a background check on members of the FCRA Class.   Second, Plaintiff alleges that L3 Unidyne failed to obtain proper authorization before obtaining a background check on the FCRA Class.   Both violations of the FCRA allegedly arise because Defendants merged the disclosure and authorization into a *single* document that also included a liability waiver.  Lastly, Plaintiff alleges, on behalf of the Wage Statement Class, that L3 Unidyne issued wage statements to its California employees that failed to include the accurate name and address of the legal entity that is the employer in violation of Cal. Lab. Code § 226(a)(8).  Kingsley Decl. ¶ 36.

### 1.     Risks Associated with the FCRA Claims

Plaintiff alleges that Defendant L3 Unidyne violated the FCRA by including a liability waiver in its background check form on the same document that contained the disclosure and authorization permitting the background check. [4]  *See Syed v. M-I, LLC,* 853 F.3d 492, 496 (9th Cir. 2017) ("We hold that a [defendant] violates Section 1681b(b)(2)(A) when it procures a[n] [individual's] consumer report after including

---

[4]     15 U.S.C. § 1681b(b)(2)(A) provides:

[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; ["Disclosure Requirement"] and
(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.   ["Authorization Requirement."]

9

a liability waiver in the same document as the statutorily mandated disclosure."); Kingsley Decl. ¶ 37. However, there are several significant risks to Plaintiff's claim, especially Plaintiff's ability to prove Article III standing. Kingsley Decl. ¶ 38.

Based upon estimates of the number of potential class members at the time of mediation, Plaintiff valued the FCRA claims arising under 15 U.S.C. § 1681(b)(2)(A)(i) and (ii) at $1,680,000.00 (840 class members x $2,000 per class member). The FCRA provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. *See* 15 U.S.C. § 1681n. The valuation of $1,680,000.00 assumes: (1) statutory damages of $1,000 per violation; (2) the authorization requirement is not duplicative of the disclosure requirement; and (3) no punitive damages are awarded. Kingsley Decl. ¶¶ 39-40.

However, Class Counsel discounted the valuation of the FCRA claims due to Defendants' defenses to liability and certification. Kingsley Decl. ¶ 41. Importantly, Defendants contend that Plaintiff cannot prove Article III standing to assert his FCRA claims. Kingsley Decl. ¶ 42. Article III standing is the key risk in this case. In *Spokeo, Inc. v. Robins*, the Supreme Court explained that "a bare procedural violation [of a statute], divorced from any concrete harm, cannot satisfy the injury-in-fact requirement of Article III." 136 S. Ct. 1540, 1548 (2016). After *Syed,* 853 F.3d 492, district courts in the Ninth Circuit (and across the country) are split on whether 15 U.S.C. § 1681b(b)(2)(A) is merely procedural or creates substantive rights such as the right to information and privacy. If § 1681b(b)(2)(A) creates substantive rights, then a violation of this provision automatically creates a "concrete injury" for purposes of Article III standing.[5] However, if § 1681b(b)(2)(A) is procedural, concrete injury

---

[5]     *See Syed*, 853 F.3d at 499–500 ("Syed alleges more than a 'bare procedural

1   requires factual allegations that support a statutory violation *and* allow a court to infer

2   *additional* harm.[6]

3        In addition to the risk of whether § 1681b(b)(2)(A) is procedural or substantive,

4   Defendants also contend that Article III standing requires a court to "fairly infer that

<br>

6   violation.' The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i),
    creates a right to information by requiring prospective employers to inform job

7   applicants that they intend to procure their consumer reports as part of the

8   employment application process. The authorization requirement, §
    1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold

9   permission to obtain the report from the prospective employer, and [therefore]

10  a concrete injury when applicants are deprived of their ability to meaningfully
    authorize the credit check."). Many district courts in the Ninth Circuit have

11  interpreted *Syed* in this manner. *See Demmings v. KKW Trucking, Inc.*, No. 14-

12  CV-494, 2017 WL 1170856, at *6–7 (D. Or. Mar. 29, 2017); *Terrell v. Costco
    Wholesale Corp.*, No. C16–1415JLR, 2017 WL 951053, at *3 (W.D. Wash.

13  Mar. 10, 2017); *Cunha v. IntelliCheck, LLC*, 254 F.Supp.3d 1124, 1130 (N.D.

14  Cal. May 26, 2017); *In re Ocwen Loan Servicing LLC Litig.*, No. 3:16–cv–
    00200–MMD–WGC, 2017 WL 1289826, at *3–5 (D. Nev. Mar. 3, 2017); *Mix*

15  *v. Asurion Ins. Servs. Inc.*, No. CV-14-02357, 2016 WL 7229140, at *6 (D.

16  Ariz. Dec. 14, 2016); *Meza v. Verizon Commc'ns, Inc.*, No. 1:16-CV-0739 AWI
    MJS, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016).

<br>

18  [6] *See e.g., Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir.

19  2017); *Mitchell v. Winco Foods, LLC*, No. 1:16-CV-00076-BLW, 2017 WL
    5349539, at *2 (D. Idaho Nov. 13, 2017); *Bercut v. Michaels Stores Inc.*, No.

20  17-CV-01830-PJH, 2017 WL 2807515, at *5 (N.D. Cal. June 29, 2017);

21  *Saltzberg v. Home Depot, U.S.A., Inc.*, No. CV1705798RGKAKX, 2017 WL
    4776969, at *2 (C.D. Cal. Oct. 18, 2017); *In re Michaels Stores, Inc., Fair*

22  *Credit Reporting Act (FCRA) Litigation*, MDL No. 2615, 2017 WL 354023, at

23  *7 (D.N.J. Jan. 24, 2017); *Dyson v. Sky Chefs, Inc.*, No. 3:16-CV-3155-B, 2017
    WL 2618946, at *8–9 (N.D. Tex. June 16, 2017); *Landrum v. Blackbird*

24  *Enters., LLC*, 214 F. Supp. 3d 566 (S.D. Tex. 2016); *Fisher v. Enterprise*

25  *Holdings, Inc.*, No. 15-CV-00372, 2016 WL 4665899 (E.D. Mo. Sept. 7, 2016);
    *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750, 757 (S.D. Ohio 2016); *Shoots*

26  *v. iQor Holdings US Inc.*, No. 15-CV-563 (SRN/SER), 2016 WL 6090723, at

27  *7 (D. Minn. Oct. 18, 2016); *LaFollette v. RoBal, Inc.*, No. 1:16-CV- 2592-
    WSD, 2017 WL 1174020, at *3 (N.D. Ga. Mar. 30, 2017).

1  [the plaintiff] was confused by the inclusion of the liability waiver with the disclosure
2  **and** would not have signed it had it contained a sufficiently clear disclosure, as
3  required in the statute." *Syed,* 853 F.3d at 499-500 (emphasis added). Defendants
4  argue that although Plaintiff alleges that he was "confused" by L3 Unidyne's
5  disclosure form, Plaintiff did not allege that he "would not have signed" the
6  authorization form absent the liability waiver. *See* FAC ¶33. District courts go both
7  ways on this issue.[7] While Class Counsel is reasonably confident that it could prove
8  Article III standing, Article III standing was a heavily contested issue between the
9  Parties. Kingsley Decl. ¶ 43.

10      Defendants also assert that Plaintiff cannot show that Defendants' alleged
11  violation of the FCRA was "willful" as required for recovery. *See* 15 U.S.C §
12  1681n(a)(1). However, Plaintiff is extremely confident it could prove willfulness.
13  Kingsley Decl. ¶ 44. *See Syed,* 853 F.3d at 502 ("We also hold that, in light of the
14  clear statutory language that the disclosure document must consist 'solely' of the
15  disclosure, a prospective employer's violation of the FCRA is 'willful' [as a matter
16  of law] when the employer includes terms in addition to the disclosure, such as the
17  liability waiver here, before procuring a consumer report or causing one to be
18  procured.").

19      Defendants also argue that Plaintiff's claim for violating the FCRA's
20  authorization requirement is duplicative of his first FCRA claim involving improper
21  disclosure. *See Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL
22  1071570, at *12 (E.D. Va. Mar. 15, 2016). Kingsley Decl. ¶ 45.

23      With respect to class certification issues, Defendants contend that both class
24  definitions are overbroad. A class can only be certified if it is defined so that every
25  class member has Article III standing. *See Mazza v. Am. Honda Motor Co.,* 666 F.3d

26  _____

27  [7]   *Compare Mitchell v. Winco Foods, LLC*, No. 1:16-CV-00076-BLW, 2017 WL
      5349539, at *2 (D. Idaho Nov. 13, 2017) *with Bercut v. Michaels Stores Inc.*,
28    No. 17-CV-01830-PJH, 2017 WL 2807515, at 5* (N.D. Cal. June 29, 2017).

581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing."). Defendants contend that Plaintiff's FCRA Class is not limited to individuals who were confused by the inclusion of a liability waiver in the disclosure form and would not have signed an authorization but for its inclusion. Kingsley Decl. ¶ 46.

Defendants further contend that Plaintiff's FCRA Class goes back five years, but the FCRA provides two statutes of limitations—one of which only goes back two years—and mandates that each plaintiff be bound by "the earlier of" the two. 15 U.S.C. § 1681p. Defendants contend that each FCRA Class member was necessarily aware of the alleged violation at the time he or she signed the Background Investigative Consent form, and thus each FCRA Class member who filled out a FCRA disclosure with a liability waiver more than two years before the filing of the complaint would thus be subject to a statute of limitations defense. Further, Defendants contend that the applicability of an individualized statute of limitations defense—which requires a separate inquiry into when each class member subject to the defense personally discovered the alleged violation—means that a class action is not superior to other methods of adjudication. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (where statute of limitations defense cannot be resolved on a class-wide basis, class certification is inappropriate). Kingsley Decl. ¶¶ 47-48.

However, Plaintiff is reasonably confident that it could certify an FCRA class that goes back two (2) or five (5) years. Whether each class member had constructive notice of the violation is a common question that can be decided by the Court by looking solely at the invalid disclosure form. There is no need to depose each class member to determine their actual notice. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004), *cert. denied sub nom*, (holding that whether the policyholders had "constructive notice [of their cause of action] is an issue that can

be decided on a classwide basis."). Moreover, certifying a FCRA class that goes back five years must be possible, otherwise 15 U.S.C. § 1681p(2) would not encourage employers to comply with the FCRA. Kingsley Decl. ¶ 49.

Finally, Defendants contend that Plaintiff's status makes him an obviously inadequate class representative. *See Dunford v. Am. DataBank*, LLC, 64 F. Supp. 3d 1378, 1396 (N.D. Cal. 2014) (proposed class representative asserting FCRA claim not adequate because of convictions). Kingsley Decl. ¶ 50.

All of these risks required Class Counsel to significantly discount the value of the FCRA claims. Kingsley Decl. ¶ 51.

### 2. Risks Associated with the Wage Statement Claim

Based upon estimates of the number of potential class members at the time of mediation, Plaintiff valued the Wage Statement Claim brought under Cal. Lab. Code § 226(a)(8) ("An employer . . . shall furnish to his or her employee . . . an accurate itemized statement in writing showing . . . the name and address of the legal entity that is the employer...") at $543,150.00.[8]   Kingsley Decl. ¶ 52. Cal. Lab. Code § 226(e)(1) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) [Cal. Labor Code § 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff's wage statements have "L3 Communications" listed as the employer. Plaintiff alleges that neither the actual employer, "L3 Unidyne, Inc.," nor the parent

---

[8]   $543,150.00 = (total number of wage statements issued during wage statement liability period [5,538] x $100) – # of current and former employees of L3 Unidyne that received at least one wage statement to determine the "initial" amount [213] x $50). Kingsley Decl. ¶ 53.

corporation, "L3 Technologies, Inc." appear on Plaintiff's wage statements.  FAC ¶¶ 23, 67.  In addition, Plaintiff's wage statements listed an address of "PO Box 16320. 640 North 2200 West, Salt Lake City, UT 84116-0320."  Plaintiff alleges that the actual entity address for L3 Unidyne is "c/o L3 Communications Corp., 600 Third Avenue, New York, NY 10016," while the actual entity address for L3 Technologies is "600 Third Avenue, New York, NY 10016."  Kingsley Decl. ¶¶ 54-55, FAC, ¶¶ 11-12.

Defendants contend that the wage statements comply with Cal. Lab. Code §226(a)(8).  *See Delgado v. New Albertson's, Inc.*, 2009 WL 10670628, at *4 (C.D. Cal. Dec. 15, 2009) (wage statement did not violate § 226(a)(8) where "the wage statement listed both the 'doing business as' name of New Albertson's and the name of New Albertson's parent company, SUPERVALU, albeit in a slightly truncated version without the 'Inc.' following the name.'"); *Elliot v. Spherion Pac. Work, LLC*, 368 F. App'x 761, 764 (9th Cir. 2010) ("As to the name of the legal entity that was her employer, Elliot's wage stubs stated that her employer was 'Spherion Pacific Work, LLC,' instead of Spherion's legal name, 'Spherion Pacific Workforce, LLC.' This slightly truncated name did not violate section 226.")  However, Class Counsel is reasonably confident it could distinguish these cases to show that Defendants violated Cal. Lab. Code § 226(a)(8).  Kingsley Decl. ¶¶ 56-57.

Nevertheless, Defendants make a viable argument that Plaintiff lacks Article III standing because he did not plead any facts to establish that he suffered a "concrete" injury as a result of any purported violation of Cal. Lab. Code § 226(a)(8). Plaintiff is only aware of a single case post-*Spokeo* (and none post-*Syed*) that directly addresses Article III standing for 226(a) claims. Kingsley Decl. ¶¶ 58-59.  The district court in *Godhigh v. Savers, LLC*, No. 16-cv-02874-WHO, 2016 WL 4585778 (N.D. Cal. Sept. 2, 2016) held:

Although plaintiffs' allegations regarding injury are relatively general,

they allege that as a result of the non-compliant wage statements they were "confused about whether they were paid properly and/or they were misinformed about how many total hours they worked in each pay period." Compl. ¶ 116. Plaintiffs have not simply alleged a statutory violation, but have alleged that the violations caused them confusion and caused them to be misinformed. Compl. ¶ 116. This is a concrete injury sufficient to establish plaintiffs' standing under Article III. *See Spokeo*, 136 S. Ct. at 1549[.]

*Id.* at *3.

Furthermore, whether Defendants acted knowingly and intentionally as required for damages under Cal. Lab. Code § 226(e)(1) is heavily contested and difficult for plaintiffs to prove. Defendants argued that that a "'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." *See* Cal. Lab. Code § 226(e)(3). In addition, Defendants argued that Plaintiff did not "suffer injury" as required by Cal. Lab. Code § 226(e)(1) since he did not allege, for example, that he lost wages as a result of the inaccurate employer name and address on his wage statements. *See Elliot*, 572 F. Supp. 2d at 1181 (finding that there was no "injury" and therefore could be no recovery because the plaintiff did not allege "actual lost wages, [] the possibility of lost wages" or "confusion over whether [employees] received all wages owed them"). Plaintiff contested the latter point since there is case law going the other way. *See e.g., Delgado v. New Albertson's, Inc.*, No. 08-0806 DOC (RNBx), 2009 WL 10670628, at *3 (C.D. Cal. Dec. 15, 2009) ("Other courts have found that the injury requirement was fulfilled in cases not only where there was actual injury in the form of lost wages *but also* in cases where there was *only* employee confusion") (italics added). However, Plaintiff had to acknowledge there was risk presented by Defendants' argument. Kingsley Decl. ¶¶ 60-62.

Defendants also contend that the Wage Statement Class is not easily certified because it is not limited to individuals with Article III standing—*e.g.*, those who suffered a "concrete" harm as a result of the purported statutory violation of Cal. Lab.

16

Code § 226(a)(8).  *See Mazza,* 666 F.3d at 594 ("[N]o class may be certified that contains members lacking Article III standing.")  Kingsley Decl. ¶ 63.

Based on the foregoing risks, Class Counsel felt that the Cal. Lab. Code § 226 claim required a substantial discount.  Kingsley Decl. ¶ 64.

**B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

In making the fairness determination, the Court may also weigh the risk, expense, and complexity of continued litigation against the certainty and immediacy of recovery from a settlement.  *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 458 (9th Cir. 2000).  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 *Newberg on Class Actions* § 11.41 (4th ed. 2002 & Supp. 2008).

Given the risks outlined above, the issues in this case were complex and the risk for Plaintiff and the Class Members was high, given the many variables with uncertainty.  Kingsley Decl. ¶ 65.  There is significant expense associated with the class certification process, which the parties can avoid by entering into the contemplated settlement.  Kingsley Decl. ¶ 66.  If the Court did eventually certify the class (other than for purposes of settlement as requested below), a class trial involving almost 800 Class Members would require the retention of expensive expert witnesses, the accrual of extensive litigation costs, and a significant time commitment by the parties.  Kingsley Decl. ¶ 67.  Finally, given the complexity and unsettled nature of the issues in this case, it is likely that any outcome at trial would have resulted in a lengthy and costly appeal.  Kingsley Decl. ¶ 68.  An appeal would result in further delay for the Class Members, who are waiting for a resolution.  *Id.*

**C.    The Risk of Maintaining Class Action Status Through Trial**

Class Counsel is reasonably confident that the Court would certify the proposed

FCRA and Wage Statement classes in this case based on the reasons set forth in section VI below. Kingsley Decl. ¶ 69. However, Class Counsel had to acknowledge the risks posed by Defendants' foregoing arguments. Kingsley Decl. ¶ 70. Furthermore, decertification is always a possibility. Kingsley Decl. ¶ 71.

### D.     The Amount Offered in Settlement

It was difficult for the Parties to reach this settlement. Kingsley Decl. ¶ 72. They arrived at it only after attending a full-day mediation with Hon. Carl J. West (Ret.) on May 9, 2018. *Id.* The full value of all claims in this action at the time of the mediation amounted to $2,223,150.00.[9] [10]  Kingsley Decl. ¶ 73. However, given the foregoing risks, Plaintiff believes that the settlement amount of $275,000.00 is adequate, reasonable, and in the best interest of the Settlement Classes. Kingsley Decl. ¶ 74.

### E.     The Extent of Discovery Completed, and the Stage of the Proceedings

A class action settlement must be informed by sufficient discovery. *In re*

---

[9]  $1,680,000.00 = 840 FCRA class members * $2,000. This FCRA calculation assumes that the disclosure and authorization requirements are separate violations, and each violation results in $1,000 in statutory damages. Also, the FCRA calculation assumes that no punitive damages are awarded. *See* 15 U.S.C. § 1681n(a). Kingsley Decl. ¶ 73.

[10]  $543,150.00 = (5,538 wage statements * $100) − (213 wage statement class members * $50). This calculation assumes that each employee received 26 wage statements per year and each of those wage statements violated Cal. Lab. Code § 226(a)(8). In addition, this calculation assumes that no employee exceeds the aggregate penalty cap of four thousand dollars. *See* Cal. Lab. Code § 226(e)(1) ("An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [Labor Code § 226(a)] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.") Kingsley Decl. ¶ 73.

*Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). When a settlement following sufficient discovery and genuine arms-length negotiation is reached, the negotiation is presumed fair. *See Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017).

Here, discussions between counsel for the Parties, informal discovery, as well as the diligent investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. Kingsley Decl. ¶ 84. Specifically, Defendants informally produced Plaintiff's personnel file, which included his wage statements and the FCRA background check form that he signed. Kingsley Decl. ¶ 85. In addition, Defendants provided estimates of the number of FCRA class members and the number of Wage Statement class members. *Id.* Defendants also indicated that wage statements typically cover a two-week period. *Id.* Plaintiff used this information to prepare a mediation brief and an accurate damage model. *Id.*

**F.     The Experience and Views of Counsel**

In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of the attorneys. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017). They are the ones who are most closely acquainted with the facts of the underlying litigation. *Id.* "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nunez v. BAE Systems San Diego Ship Repair, Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017).

In the present case, the settlement was negotiated by experienced counsel, who believe that it is fair and reasonable, and in the Settlement Class's best interests. The

1  firms of Kingsley & Kingsley APC and Davtyan Professional Law Corporation are
2  well versed in class action litigation and have diligently and aggressively pursued this
3  action.   Kingsley Decl. ¶¶ 86-88, 120-124; Davtyan Decl. ¶¶ 2-4.   Kingsley &
4  Kingsley has focused a substantial percentage of its practice since the year 2000 on
5  wage, hour, and working condition violations. Kingsley Decl. ¶¶ 87-88.  Kingsley &
6  Kingsley currently serves as class counsel for dozens of pending class action lawsuits
7  in Northern, Central, and Southern California.  *Id.*  A list of representative cases that
8  Kingsley & Kingsley has handled is included in the accompanying declaration of Eric
9  B. Kingsley.  *Id.*  Likewise, Emil Davtyan has substantial class action experience, as
10 described in the concurrently filed Declaration of Emil Davtyan.  Davtyan Decl. ¶¶ 2-
11 4.  After factoring in the risks explained above, Class Counsel believes that the
12 proposed settlement is fair and reasonable.

13        **G.    The Reaction of the Class Members to the Proposed Settlement**

14        "The reactions of the members of a class to a proposed settlement is a proper
15 consideration for the trial court."  5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew
16 Bender 3d ed.).

17        Here, the settlement administration process it not yet complete.  Kingsley Decl.
18 ¶ 90.  Members of the Settlement Classes had until October 8, 2018 or forty-five (45)
19 calendar days after the Notice is initially mailed or, with respect to current employees,
20 emailed, to submit a valid request for exclusion or to object. *Id.*  However, the Claims
21 Administrator needs additional time to account for any objections or requests for
22 exclusion that were timely postmarked, but are not yet received by the Claims
23 Administrator.  Kingsley Decl. ¶ 91.  Based on the latest weekly status report from
24 the claims administrator on October 5, 2018, there are zero (0) objections and one (1)
25 request for exclusion.  Kingsley Decl. ¶ 92; Ex. C; Ex. D.

26        As of today, the reaction of the class members is positive and weighs in favor
27 of approval.  Kingsley Decl. ¶ 93; Ex. C; Ex. D.

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**H.     The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator**

As noted by the Ninth Circuit, the eight listed factors analyzed above is "by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688 F.2d at 625. As such, courts often inquire into the procedure by which the settlement was reached.

Here, the Settlement Agreement was reached after informal production of Plaintiff's personnel file, as well as an estimate of the number of FCRA and Wage Statement class members. Kingsley Decl. ¶14. Following informal discovery, the parties engaged in a full-day mediation with Hon. Carl J. West (Ret.), and settled only after extensive arm's length negotiations. Kingsley Decl. ¶ 72. This procedure weighs in favor of approving the settlement.

## VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

Although the Court conditionally certified the Settlement Class in its Preliminary Approval Order, presently the Court should also conclude that the requirements of Federal Rule of Civil Procedure 23 are met and certify the Settlement Classes for purposes of final approval. In evaluating a class for settlement purposes under Federal Rule of Civil Procedure 23(e), the Court must determine that the Settlement Class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). As discussed below, the proposed Settlement Classes meet all of the requirements of certification for settlement purposes.

### A.     FRCP 23(a) Requirements for Class Certification Are Met

Final approval of the Settlement is justified because the class certification requirements exist for the Settlement Classes. Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.   All four of these elements are satisfied by the proposed class for settlement purposes.

### 1.   Numerosity

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met. *See Hanlon*, 150 F.3d at 1019.

During the applicable FCRA Settlement Period, it is now estimated there are approximately 764 class members, and during the Wage Statement Settlement Period, it is estimated there are 254 class members.   "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 135-36 (E.D.N.C. 2018).   However, Courts have found that classes around this size meet the numerosity requirement. *See, e.g.*, *Pataky v. Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS, 2018 WL 3020159, at *4 (S.D. Cal. June 19, 2018) (finding that a class of "nearly 800 Settlement Class Members" satisfied numerosity for class certification for settlement purposes.)   Therefore, for the proposed Settlement Classes, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes.   Kingsley Decl. ¶ 95.

### 2.   Commonality

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").

Here, the Settlement Class Members all seek the same remedies under identical law and the same theories of recovery.   All Settlement Class Members' claims relate

to Defendant L3 Unidyne's alleged violation of the Fair Credit Reporting Act for failure to make proper disclosures and obtain proper authorization, and alleged failure to provide accurate itemized wage statements under the California Labor Code. Kingsley Decl. ¶¶ 96-98. Plaintiff alleges that L3 Unidyne created an allegedly "standard" FCRA background check form and issued wage statements according to a centrally-determined payroll policy. *Id.*

The settlement compensates Settlement Class Members for these identical claims. *Id.* Under these circumstances, the commonality requirement is satisfied for settlement purposes. *Hanlon*, 150 F.3d at 1019–20.

### 3.   Typicality

The typicality requirement of Rule 23(a) is met if the claims of the plaintiff are typical of each class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Factual differences may exist between the classes and the plaintiff, provided the claims arise from the same events or course of conduct and are based upon the same legal theories. *Welmer v. Syntex,* 117 F.R.D. 641, 644 (N.D. Cal. 1987). Moreover, the typicality and commonality elements of Rule 23(a) "tend to merge" because both assess whether the claims of a class and the plaintiffs are sufficiently interrelated to make class treatment appropriate. *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Here, Plaintiff's claims are not only typical of those of all Settlement Class Members—they are identical. Plaintiff alleges that Defendants included a liability waiver in a form that contained the disclosure and authorization permitting a background check. Kingsley Decl. ¶ 99. This is the same claim alleged on behalf of all FCRA Class members. *Id.* The same analysis is true of Plaintiff's claim regarding information allegedly missing from his and all other Wage Statement Class members' wage statements. Plaintiff satisfies the typicality requirement for settlement purposes because his claims arise from the same factual basis and are based on the same legal

1 theories as those applicable to all Settlement Class Members. *Welmer,* 117 F.R.D. at
2 644.

### 4.   Adequacy of Representation

4 Rule 23(a)(4) requires that the plaintiff and class counsel fairly and adequately
5 represent and protect the interests of each class. If the plaintiff and class counsel have
6 no interests adverse to the interest of the proposed class members and are committed
7 to vigorously prosecuting the case on behalf of the classes, then the adequacy
8 requirement is met. *Hanlon,* 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d
9 1516, 1533 (11th Cir. 1985).

10 Plaintiff has interests directly aligned with all Settlement Class Members and
11 has prosecuted this case on their behalf. He has no apparent conflicts with Settlement
12 Class Members. He has demonstrated his commitment to prosecute this litigation on
13 their behalf through its conclusion. Kingsley Decl. ¶ 100.

14 Under the proposed settlement, Plaintiff Estes requests a small enhancement
15 payment—$5,000—for his time and efforts, including assisting proposed Class
16 Counsel with factual issues surrounding the case, participation at the mediation and
17 potential exposure to costs if he did not prevail. Kingsley Decl. ¶ 102. This award
18 represents a small percentage of the total value of the settlement consideration, and
19 therefore does not constitute a sufficient conflict of interest to foreclose fulfilling the
20 adequacy requirement. *Id.*

21 Additionally, proposed Class Counsel are experienced litigators. As evidenced
22 by the declaration of Eric B. Kingsley, proposed Class Counsel have substantial
23 experience prosecuting complex class action cases, both in the consumer and
24 employment contexts. As such, there is no conflict of interest between Plaintiff,
25 proposed Class Counsel, and the Settlement Class Members, and the adequacy
26 element is met. Kingsley Decl. ¶¶ 103-104.

27

28

## B.     FRCP 23(b)(3) Requirements for Class Certification Are Met

The proposed Settlement Classes also meet the requirements of Rule 23(b)(3) for settlement purposes because: 1) common questions predominate over questions that affect individual members; and 2) class resolution is superior to other available methods of adjudication.  When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618–20 (1997).  A showing of manageability at trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 618–20, 623; *see also Hanlon*, 150 F.3d at 1022.

### 1.     Predominance

The claims of the Settlement Classes here are sufficiently cohesive to warrant certification.  For settlement purposes, common questions of fact and law affecting proposed Settlement Class Members in this case predominate over questions that may affect individual members.  In analyzing predominance, as with commonality, it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.  *Hanlon*, 150 F.3d at 1022.  The test is whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.  Here, the proposed Settlement Classes are sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies—the same facts and law govern their claims.  All of the Settlement Class Members seek statutory damages and penalties based on the same allegations.  As a result, common questions of law and fact predominate here.  Kingsley Decl. ¶ 105.

### 2.     Superiority

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  The

superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in *Hanlon*, the alternative method of resolution is hundreds of individual claims for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery. *Id*; Kingsley Decl. ¶ 106.

## VII.  CONCLUSION

The Settlement is fair and reasonable and all of the requirements for final approval are met. Plaintiff therefore requests that the Court grant this motion and enter an order: (1) granting Final approval of the settlement; (2) certifying the Settlement Classes; (3) awarding class representative payment of $5,000.00 to the Named Plaintiff; (4) awarding attorneys' fees and costs in the amount detailed in the concurrently filed Motion for Attorneys' Fees and Costs; and (5) entering judgment in the case.

Dated:  October 11, 2018                    KINGSLEY & KINGSLEY, APC


By: _____

Eric B. Kingsley
Kelsey M. Szamet
Attorneys for Plaintiff Joseph Estes
and the Classes

26