UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ESTES, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L3 TECHNOLOGIES, INC.; and L3 UNIDYNE, INC.,<br><br>Defendants. | Case No.: 3:17-cv-02356-H-LL<br><br>**ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASSES;**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; and**<br><br>**(3) APPROVING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT**<br><br>[Doc. Nos. 32, 32-1] |

On October 12, 2018, Plaintiff Joseph Estes filed a motion for final approval of class action settlement and a motion for attorneys' fees, costs, and class representative enhancement payment. (Doc. Nos. 32, 32-1.) The Court held a hearing on the matter on January 9, 2019. Kelsey Szamet appeared for Plaintiff, and Chet Kronenberg appeared for Defendants. For the following reasons, the Court grants both motions.

## Background

### I. Factual and Procedural Background

Defendants L3 Technologies, Inc. and L3 Unidyne, Inc. (collectively, "Defendants") provide a broad range of communication and electronic systems products for military, homeland security, and commercial use. (Doc. No. 9 ¶ 2.) Defendants are Delaware corporations and maintain several offices throughout California, including in the City and County of San Diego, California. (Id. ¶ 10.) Plaintiff was hired through Defendants' San Diego office to work as a mechanic. (Id. ¶¶ 8, 9.) He began work in September 2017 in Camp Pendleton, California. (Id. ¶ 9.) As part of his job application, Plaintiff filled out Defendants' "Background Investigation Consent" form, which purported to permit Defendants to obtain a consumer report verifying Plaintiff's background experience. (Id. ¶ 3.) The form also included a liability release provision, which stated, in pertinent part:

> I release L3 TECHNOLOGIES, INC. and/or its agents and any person or entity, which provides information pursuant to this authorization, [from] any and all liabilities, claims or law suits in regards to the information obtained from any and all of the above references sources used.

(Id. ¶¶ 25, 26.)

Plaintiff alleges that the Background Investigation Consent form did not constitute valid consent for purposes of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") because it included the liability release provision in addition to authorizing Defendants to obtain a consumer report. (Id. ¶¶ 17–20.) Specifically, Plaintiff alleges that Defendants' use of the form violated 15 U.S.C. § 1681b(b)(2)(A), which provides:

> A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Id. § 1681b(b)(2)(A)(i)–(ii) (emphasis added). Thus, Plaintiff alleges that Defendants did not obtain proper authorization for procurement of a consumer report because the form did not consist "solely of the disclosure," but rather also included the liability release provision. (Doc. No. 9 ¶¶ 17–20, 27–28.) Further, Plaintiff alleges that in completing the form he was not aware that he was signing both an authorization and a waiver combined into one document. (Id. ¶ 33.) He alleges that he was "confused by the authorization-waiver document and did not understand, based on the document, that Defendants would be requesting a 'consumer report' as defined in the FCRA or that the document purported to waive his right to sue." (Id.)

Additionally, Plaintiff alleges that Defendants violated California Labor Code § 226(a) by issuing wage statements to him that did not contain the name and address of the legal entity that was his employer. (Id. ¶¶ 4, 23.) Plaintiff's wage statements allegedly contained neither the name nor address of L3 Unidyne or L3 Technologies. (Id. ¶ 4.)

Plaintiff brought this class action on behalf of himself and two proposed classes: (1) an "FCRA Class," defined as "all persons in the United States who filled out Defendants' standard 'Background Investigation Consent' form that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of the Complaint to the present time"; and (2) a "Wage Statement Class," defined as "all employees who are employed or have been employed by Defendants in the State of California who worked one or more pay periods since one (1) year prior to the filing of the First Amended Complaint in this action and continuing to the present." (Id. ¶ 5.) In his complaint, Plaintiff seeks declaratory relief, statutory and punitive damages, and attorneys' fees and costs. (Id. at 15.)

On February 9, 2018, Plaintiff filed the first amended complaint. (Doc. No. 9.) On May 9, 2018, the parties engaged in a full-day mediation. (Doc. No. 32 at 10.) There, the parties reached a tentative settlement and subsequently engaged in extensive negotiations about the terms and conditions of settlement. (Id.) On June 25, 2018, Plaintiff moved for preliminary approval of the settlement. (Doc. No. 25.)

On August 1, 2018, the Court issued an order certifying the class for settlement purposes, conditionally granting preliminary approval of the class settlement, approving class notice, appointing the claims administrator, and scheduling a final approval hearing. (Doc. No. 28.) In its order, the Court conditioned its preliminary approval on the parties submitting "(1) evidence demonstrating that a driving nexus indeed exists between the putative class and the currently proposed cy pres beneficiaries, [Bet Tzedek's Employment Rights Project]; or (2) an alternative cy pres recipient(s) that satisfies the Ninth Circuit's standards." (Id. at 12.) The parties presented evidence showing that Bet Tzedek's Employment Rights Project "seeks to enforce minimum labor standards in the workplace by assisting low-wage workers through a combination of individual representation before the Labor Commissioner, litigation in state and federal court, legislative advocacy, and community education," and works on cases involving wage-and-hour violations and FCRA violations. (Doc. No. 30 at 2.) The Court concluded that Bet Tzedek is a suitable cy pres beneficiary in this case and granted preliminary approval of the class settlement. (Id.)

## II. Settlement and Notice Details

The proposed settlement has been submitted as a formalized stipulation with the present motion. (Doc. No. 32-3, Exh. A.) The total amount of the settlement is $275,000. (Id. at 3.) The settlement allocates $5,000 as an enhancement award to the named Plaintiff, $91,666.67 in attorneys' fees, and $6,000 in litigation costs,[1] leaving a Net Settlement Amount of $172,333.33 for the classes. (Id. at 16–18.) Plaintiff's counsel states that "Defendants have separately agreed to pay for all settlement administration costs" and therefore, "settlement administration costs will not be deducted from the Net Settlement Amount." (Kinglsey Decl. ¶ 78.) For the FCRA claims, each of the 764 FCRA Class members receives $75, totaling to $57,300 of the Net Settlement Amount. (Id. ¶ 81.) The remaining $115,033.33 will be "divided pro rata per Wage Statement Class member based

---

[1] Class counsel incurred costs of $6,691.18, but the settlement agreement caps cost reimbursement at $6,000. (Doc. No. 32-2, Kingsley Decl. ¶ 77.)

on the number of Eligible Itemized Wage Statements that she/he received as compared to the total number of Eligible Itemized Wage Statements that each Wage Statement Class member has received in California at any time during the Wage Statement Period." (Id.; Doc. No. 32-3 at 15.)

In exchange for the settlement payment, Defendants will be released from "any and all claims, known or unknown, that Class Members have arising out of or relating directly or indirectly in any manner whatsoever to the claims alleged in the operative complaint, or which could have been alleged or asserted [] based on the facts alleged in the operative complaint, including (i) any and all claims under the FCRA and any parallel state or common law claims related to background checks or consumer reports for employment purposes; and (ii) any and all claims under the California Labor Code related to wage statements[.]" (Id. at 11.) Any funds unclaimed after 180 days will be distributed to cy pres recipients as follows: 25% to the State Treasury for deposit in the Trial Court Improvement and Modernization Fund, 25% to the State Treasury for deposit in the Equal Access Fund of the Judicial Branch, and 50% to Bet Tzedek Legal Services. (Id. at 15.)

The Wage Statement Class consists of 254 members, and the FCRA Class consists of 764 members, with 125 individuals as members of both classes. (Doc. No. 35, Chiango Decl. ¶¶ 4, 5.) Accordingly, the claims administrator attempted to provided notice to 893 total class members by email or mail. (Id. ¶ 5; Doc. Nos. 35-1, Exh. A; 35-2, Exh. B.) Of those, 103 notices were returned as undeliverable. (Chiango Decl. ¶ 10.) The claims administrator was able to re-mail 6 of those to a forwarding address and re-mail 71 through a skip trace updated address. (Id.) Therefore, 867 of 893 class members were noticed of their right to exclusion from or objection to the settlement, provided any request was postmarked by October 8, 2018. (Id. ¶¶ 5–12.) There were no objections and only one request for exclusion. (Id. ¶¶ 11, 12; Doc. No. 35-3, Exh. C.)

/ / /

/ / /

/ / /

**Discussion**

**I. Class Certification**

A class may be certified under Federal Rule of Civil Procedure 23(a) if: (1) the class is so numerous that joinder of all members individually is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interest of all members of the class. Furthermore, Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In its order conditionally certifying the classes for settlement purposes, the Court determined that the classes met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. No. 28.) The FCRA Class consists of:

> All individuals who applied for a position with L3 Unidyne, Inc. in the United States who filled out a "Background Investigative Consent" form that included an authorization and liability release clause at any time during the period beginning five (5) years prior to the filing of the Class Action Complaint in this action through the earlier of Preliminary Approval of the settlement of July 1, 2018[.]

(Doc. No. 32-2 at 5.) The Wage Statement Class consists of:

> All L3 Unidyne, Inc. employees in the State of California who worked one or more pay periods since one (1) year prior to the filing of the First Amended Class Action Complaint in this action and continuing through the earlier of Preliminary Approval of the settlement or July 1, 2018[.]

(Id.)

**A. Rule 23(a) Requirements**

The settlement classes meet the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Wage Statement Class consists of 254 members, and the FCRA Class consists of 764

members. (Chiango Decl. ¶¶ 4–5.) "Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." Nunez v. BAE Sys. San Diego Ship Repair Inc., 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017); see also Bee, Denning, Inc. v. Capital All. Grp., 310 F.R.D. 614, 624 (S.D. Cal. 2015); Gomez v. Rossi Concrete, Inc., 270 F.R.D. 579, 588 (S.D. Cal. 2010). Accordingly, the classes meet the numerosity prerequisite in this case.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). Here, several questions of law and fact are common to the classes. Specifically, there is a common question as to whether Defendants violated the FCRA by including the waiver provision in their Background Investigation Consent form, which purported to secure applicants' authorization for procurement of consumer reports. (Doc. No. 9 ¶ 42.) Further, there are common questions as to whether Defendants violated the FCRA by procuring consumer reports without valid authorization and whether any FCRA violation was willful. (Id.) There are also common questions on the Wage Statement Class claims, such as whether wage statements issued by Defendants included the required employer information. (Id.) Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v.

Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff holds the same position and claims the same injury as both the FCRA Class members and Wage Statement Class members. Both Plaintiff and the FCRA Class completed Defendant's allegedly-noncompliant Background Investigation Consent form, and both Plaintiff and the Wage Statement Class members received allegedly-noncompliant wage statements. The Court accordingly concludes that the typicality requirement is satisfied.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel: (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. Here, there do not appear to be any conflicts of interest between Plaintiff and the absent class members. Plaintiff and his counsel have vigorously prosecuted the interests of the classes, and class counsel has extensive experience in complex class action litigation. (See Kingsley Decl. ¶¶ 86–89, 99–103.) Accordingly, Plaintiff and his counsel are adequate representatives of the proposed classes, and Plaintiff has met all requirements of Rule 23(a).

### B. Rule 23(b)(3) Requirements

The settlement classes also meet the predominance and superiority requirements of Rule 23(b)(3). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594 (1997)). Predominance requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (citation omitted). Thus, "a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." Vinole v. Countrywide Home Loans, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted).

/ / /

Here, a single adjudication of claims will resolve the central issues of the case: (1) whether Defendants violated the FCRA by using a form that included a liability release provision, and (2) whether Defendants violated California law by supplying employees with wage statements lacking the name of the employing entity. (Doc. No. 9 ¶ 42.) Thus, the proposed classes are sufficiently cohesive to warrant adjudication by representation, and the predominance requirement is met. See Hanlon, 150 F.3d at 1022.

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Moreover, any class member who wanted to pursue an individual claim could elect not to participate in the settlement agreement, as one individual did. (See Doc. No. 35-3, Exh. C.) Thus, the superiority requirement is met here. Accordingly, the Court certifies the settlement classes.

## II. Settlement

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, a court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" In re Heritage Bond Litig., No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting Class Plaintiffs, 955 F.2d at 1276). The Ninth Circuit favors deference "to the private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

### A. The Strength of Plaintiff's Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and they would continue to do so if the settlement failed to receive final approval. (Doc. No. 32 at 17–26.) The disputed factual and legal issues would be complex and costly to resolve at trial. (Id.) Both sides have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof, and the general difficulties and delays of litigation. (Id.) These considerations led the parties to conclude that a timely settlement would be best for everyone involved. (See id.) See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (internal quotation marks and citation omitted). The Court concludes that the strength of the parties' positions as well as the risk of further litigation weigh in favor of approving the settlement.

### B. The Settlement Amount

The estimated total value of benefits to the classes is $2,223,150. (Doc. No. 32 at 26.) However, based on a number of risks associated with Plaintiff's case, the parties have determined that a settlement amount of $275,000 is adequate, reasonable, and in the best interest of the classes. (Id.) Of that total settlement, $172,333.33 will go to the classes, with each FCRA Class member receiving $75, and the remaining amount dispersed pro rata to

the Wage Settlement Class members. (Kinglsey Decl. ¶ 78.) Courts have approved similar FCRA class settlements measured on a per-class member basis. See, e.g., In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 454 (C.D. Cal. 2014) (holding that, because each class member could have recovered between $100 and $1000, a $5 or $30 settlement award for each member's FCRA claim was "not a de minimis amount"); Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (approving a FCRA class settlement with per class member payments of between $13 and $80).

This settlement is a good result for the classes and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C. The Extent of Discovery Completed and Stage of Proceedings

The parties have litigated this case for over a year. This settlement follows informal discovery and diligent investigation by the parties, which allowed the parties the opportunity to evaluate the merits of any claims and defenses. (Doc. No. 32 at 27.) Defendants have produced Plaintiff's personnel file, including the FCRA form that he signed and wage statements that he received. (Id.) Defendants also provided estimates of the numbers of class members. (Id.) In addition, the parties participated in a formal mediation. (Id. at 10.) Accordingly, the parties' significant investigation, informal discovery, and settlement discussions weigh in favor of granting final approval of the settlement. See Linney, 151 F.3d at 1239 (holding that class action settlements are appropriate if "the parties have sufficient information to make an informed decision about settlement").

/ / /

/ / /

/ / /

### D. The Experience and Views of Counsel

Class counsel has extensive experience acting as class counsel in the class action litigation field. (Kingsley Decl. ¶¶ 86–89.) Class counsel recommends that the settlement is fair, reasonable, and in the best interests of the classes, (Id. ¶ 89), which weighs in favor of granting approval. See Staton, 327 F.3d at 959.

### E. The Reaction of the Class Members to the Proposed Settlement

As of December 13, 2018, there have been no objections and one timely request for exclusion. (Chiango Decl. ¶¶ 11,12; Doc. No. 35-3, Exh. C.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004). The complete lack of objections is indicative of the adequacy of the settlement. Accordingly, the reaction of the class members weighs in favor of granting final approval.

### F. Collusion

The collusion inquiry addresses the possibility that the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Staton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $5,000 incentive award for the named Plaintiff does not appear to be the result of collusion. The Court evaluates such incentive awards using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Id. at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). The named Plaintiff has protected the interests of the class by researching and selecting competent counsel to bring this suit, assisting with investigation and informal discovery, and participating in status conferences and full-day mediation. (Doc. No. 32-1 at 19.) Therefore, the $5,000 award for the named Plaintiff

appears to be reasonable in light of his efforts in this litigation.

Additionally, the attorneys' fees do not appear to be the result of collusion. Plaintiff's counsel may simultaneously negotiate the merits of the action and attorneys' fees. Staton, 327 F.3d at 971. The attorneys' fees and litigation costs sought by Plaintiff's counsel are reasonable under the circumstances.

After considering all applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see Staton, 327 F.3d at 960. Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.

**III.    Attorneys' Fees, Expenses, and Incentive Payment to Class Representative**

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Court has discretion to calculate and award attorneys' fees using the percentage-of-fund method or lodestar method. Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1045 (S.D. Cal. 2015) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002)). "It is well established that 25% of the gross settlement amount is the benchmark in the Ninth Circuit for attorneys' fees awarded under the percentage method," id. at 1046, but the Court may depart from this benchmark "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors," Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Regardless of whether the Court applies the percentage method or lodestar method to calculate attorneys' fees, "the ultimate inquiry is whether the end result is reasonable" in light of all of the circumstances of the case. Franklin v. Wells Fargo Bank, N.A., No. 14cv2349–MMA (BGS), 2016 WL 402249, at *6 (S.D. Cal. Jan. 29, 2016) (citing Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000)); see Couser, 125 F. Supp. 3d at 1045. Factors bearing on an award's reasonableness include "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar

13

cases." Franklin, 2016 WL 402249, at *6 (citing Vizcaino, 290 F.3d at 1048–50.) To prevent an unreasonable result, the Ninth Circuit encourages courts to cross-check their calculations against a second method. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944–45 (9th Cir. 2011).

Here, Plaintiff has requested an award of $91,666.67 in attorneys' fees. (Doc. No. 32-1 at 7.) The overall award that Plaintiff's counsel achieved for the class was favorable and justifies the requested fee award. (See Kinglsey Decl. ¶ 130.) Application of the lodestar method confirms the reasonableness of this award. See In re Bluetooth, 654 F.3d at 944–45. Accordingly, the Court concludes that the request for fees is reasonable and grants class counsel $91,666.67 in attorneys' fees.

Plaintiff has represented to the Court that class counsel has incurred litigation expenses in the amount of $6,691.18, but class counsel only seeks to recover $6,000 because the settlement agreement caps cost reimbursement at $6,000. (Doc. No. 32-1 at 11.) After reviewing counsel's declaration regarding expenses, (Doc. No. 32-4, Exh. B), the Court concludes that the request for $6,000 in litigation expenses is reasonable and grants class counsel's request for these fees.

Finally, the $5,000 enhancement payment for the named Plaintiff is reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (citations omitted). After reviewing these factors, the Court concludes that the requested incentive award is reasonable. The $5,000 total award is well within the acceptable range awarded in similar cases. See Fulford v. Logitech, Inc., No. 08-CV-02041 MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000). The named Plaintiff has protected the interests of the

classes by researching and selecting competent counsel to bring this suit, assisting with investigation and informal discovery, and participating in status conferences and full-day mediation. (Doc. No. 32-2 at 19.) Accordingly, the Court approves the $5,000 enhancement payment for Plaintiff Estes.

## Conclusion

The Court has jurisdiction over the subject matter of this action and all parties to the action, including all settlement class members. The Court certifies the settlement class and grants final approval of the settlement. All persons who satisfy the class definition, except those class members who timely and validly excluded themselves from the class, are settlement class members bound by this judgment. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the U.S. Constitution, including the Due Process Clause.

The Court grants class counsel $91,666.67 in attorneys' fees and $6,000 in expenses. The Court grants class representative Plaintiff Estes an enhancement payment of $5,000. The attorneys' fees, expense awards, and enhancement payment will be paid out of the settlement fund created by Defendants L3 Technologies, Inc. and L3 Unidyne, Inc.

The Court will issue a final judgment consistent with Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

Dated: January 9, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT